Stephen D. Finestone (SBN 125675)
Jennifer C. Hayes (SBN 197252)
Ryan A. Witthans (SBN 301432)
FINESTONE HAYES LLP
456 Montgomery St., 20th Floor
San Francisco, California 94104
Telephone No.: 415.414.0466
Fax No.: 415.398.2830
sfinestone@fhlawllp.com
jhayes@fhlawllp.com

Attorneys for Kyle Everett,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED, aka EPHE CORPORATION,<br><br>    Debtor. | Case No. 20-30819 DM<br>Chapter 7 |
| KYLE EVERETT,<br>TRUSTEE IN BANKRUPTCY,<br><br>    Plaintiff,<br><br>v.<br><br>THOMAS B. PETERS,<br><br>    Defendant. | Adversary Proceeding No. 21-03060 DM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**[1]<br><br>Hearing:<br>Date:   January 28, 2022<br>Time:   10:30 A.M.<br>Place:   Tele/video conference<br><br>**Remote appearances only.**<br><br>*Please check www.canb.uscourts.gov for information regarding the Court's operations due to the COVID-19 pandemic.* |

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Civil Rule" references are to the Federal Rules of Civil Procedure, "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California, "AP" references are to the docket in this proceeding, and "BK" references are to the docket in the underlying bankruptcy case.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Kyle Everett, Trustee in Bankruptcy ("Plaintiff" or the "Trustee") of the estate of Benja Incorporated ("Benja" or the "Debtor"), aka EPHE Corporation, files this response in opposition to the motion of Defendant Thomas B. Peters ("Defendant" or "Peters") to dismiss the *Complaint for Avoidance and Recovery of Fraudulent Transfer; Disallowance of Claim; and Declaratory Relief* (the "Complaint"). While it is not entirely clear from Defendant's motion, it appears the motion seeks to dismiss only the First and Second Claims for Relief, as more particularly described below. This opposition will, therefore, focus on the first two claims.

As a preliminary matter, B.L.R. 9013-1(b) requires that a motion in an adversary proceeding shall provide a concise statement of what relief or Court action the movant seeks. Although styled as a "Motion to Dismiss" (the "Motion"), the Motion buries its sole reference to Civil Rule 12(b)(6), made applicable herein by Bankruptcy Rule 7012(b), which provides for dismissal of a complaint if the complaint on its face "fail[s] to state a claim upon which relief can be granted." Instead, Defendant cites only to Civil Rule 9(b), which requires, when alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake."

## I. FACTUAL BACKGROUND

Plaintiff filed the Complaint against Defendant alleging in relevant part that, on September 25, 2020, Benja transferred $250,000 to Peters, an investor who was on notice or had actual knowledge of Benja's fraud, through its founder and then-CEO Andrew Chapin ("Chapin"), with the actual intent to hinder, delay, or defraud Benja's creditors, and Plaintiff seeks to recover the transfer pursuant to 11 U.S.C. § 548(a)(1)(A) (the "First Claim") and 11 U.S.C. § 544(b) and California Civil Code § 3439.04(a)(1) *et seq.* (the "Second Claim"), among other causes of action.

## II. LEGAL STANDARD ON A MOTION TO DISMISS

To state a claim for relief and survive a motion to dismiss, the pleading "does not need detailed factual allegations" but the "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations

omitted). The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "[F]or a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). Determining whether a claim for relief is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. Therefore, if a complaint contains factual allegations "that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

Furthermore, any allegations of fraud must fulfill a heightened standard pleading to avoid dismissal. Fed. R. Civ. P. 9(b) (incorporated by Fed. R. Bankr. P. 7009). When a plaintiff includes such allegations, he must "state with particularity the circumstances constituting fraud or mistake," but "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To fulfill this standard in the Ninth Circuit, the complaint must establish "the who, what, when, where, and how" of the fraud. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Civil Rule 9(b)'s heightened pleading requirements. *Id.* at 1106.

At its heart, a motion to dismiss is a statement that even if the plaintiff is given every benefit of the doubt, the plaintiff's claim should be dismissed because it is unsupported by factual assertions or is otherwise not legally cognizable. However, for purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

//
//
//
//

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

## III.  LEGAL ARGUMENT

### A. The Court Should Reject the Motion's Attempt to Spin a Counter-Narrative Based on Unsupported Extraneous Material.

Because the Motion is brought pursuant to Civil Rule 12(b)(6), only the specific facts alleged in the Complaint are properly before the Court. *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1994). The Motion contains abundant extraneous material – factual allegations that are not contained in the Complaint. The Motion introduces new "relevant facts, briefly stated," and an alternative theory "without presumptions" that are not supported by any evidence. Rather, Defendant relies on this extraneous material to spin a counter-narrative – Defendant's own theory of the case – and asks the Court to conclude that, under Defendant's version of events, Plaintiff fails to state a claim. The Motion turns Civil Rule 12(b)(6) on its head. Defendant suggests that the Court should disregard the Complaint's well-pled allegations, which the Court must presume are true, and accept Defendant's version of events – precisely the opposite of what Civil Rule 12(b)(6) instructs the Court to do.

Defendant's Motion contains various musings about Ponzi schemes and the risks of a startup business. These are not relevant to the Court's inquiry on a motion to dismiss and should be ignored here. The Motion offers an entirely different set of "facts" that are not alleged in and are contrary to the allegations in the Complaint. Defendant says "Benja was a start-up, *admittedly* 'burning money,"' Motion at 8:14 (emphasis added), but *admitted by whom*? There is no allegation, much less any admission in the Complaint that Benja was "burning money." On the contrary, the Complaint stated that Chapin painted a picture of Benja as a successful business that generated millions of dollars in revenue and had large contracts with numerous well-known national companies to place advertisements for their merchandise, and Chapin approached investors to raise additional funding to expand its business. Complaint at ¶¶ 2, 5, 6, 18. Defendant suggests that Benja was "raising investments to fund its business operations in hopes that at some future juncture, [Benja's] business would either become profitable, or more likely be acquired." Motion at 8:14-16. However, this is directly contrary to Plaintiff's allegation in the Complaint that,

at all relevant times, and other than de minimis legitimate business transactions,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Case: 21-03060    Doc# 6    Filed: 01/14/22    Entered: 01/14/22 15:44:34    Page 4 of 8

> Chapin operated Benja as a fraudulent scheme wherein Benja made payments to creditors and earlier investors from the proceeds of later, fraudulently obtained loans and investments, rather than from profits of the putative underlying business venture. This pattern of using new money from later fraudulent transactions to fund the fulfillment of earlier obligations constitutes a Ponzi scheme. The transfer of Benja's property to Defendant was pursuant to a Ponzi scheme and not related to any legitimate business transaction, *because in fact no such legitimate profitmaking business existed*.

Complaint at ¶ 8 (emphasis added). Indeed, the Complaint made clear that Benja was not paying obligations that arose from earlier transactions from profits, but rather used phony profits to lure investors and lenders, and then used those funds to pay off others, like Defendant, when suspicions arose in order to conceal and perpetuate the fraudulent scheme. Complaint at ¶¶ 3, 6-9.

Defendant then posits that "it *seems likely* that most of Benja's funding came, not from defrauding investors, but from selling or hypothecating non-existent receivables to lenders: $5 million from Busey Bank and $5 million from MHC." Motion at 8:16-18 (emphasis added). Defendant is merely speculating without evaluating the allegations in the Complaint. The Complaint does not make or rely on any allegation of how much Benja borrowed from Busey Bank and MHC. Defendant goes on to state, "*[n]o one* thought that Benja could survive for any material period of time without fresh infusions of new investments to keep the doors open." Motion at 8:20-21 (emphasis added). Again, Defendant does not identify *who thought this* before making another unsupported extraneous assertion. The Motion claims that "Mr. Chapin acknowledged that Mr. Peters would have believed that Benja could not have funded the payment itself and so the payment must have come from Mr. Chapin." Motion at 9:1-4. Once again, Defendant presents unsupported factual allegations that are not contained in the Complaint.

In considering the Motion under Civil Rule 12(b)(6), the Court must look solely to the Complaint to determine whether Plaintiff has stated a claim upon which relief may be granted. The Complaint accomplishes this, and the Court should ignore the alternate story contained in the Motion.

### B. The Complaint is Well-Pled Under Civil Rules 8(a) and 9(b).

The First and Second Claims meet the pleading standards of both Civil Rules 8(a) and Rule 9(b). Once the Court cuts through Defendant's musings about what he believes happened, the

Motion essentially argues the First and Second Claims are not pled with sufficient particularity. Defendant contends the Complaint relies on the "Ponzi scheme presumption" to establish Debtor's actual intent to defraud for purposes of recovering the transfer under §§ 548(a)(1)(A), 544(b), and California Civil Code § 3439.04(a)(1) *et seq. See Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Grp., Inc.)*, 916 F.2d 528, 535 (9th Cir. 1990) ("[T]he debtor's actual intent to hinder, delay or defraud its creditors may be inferred from the mere existence of a Ponzi scheme . . . that knowledge that a transaction will operate to the detriment of creditors is sufficient for actual intent") (internal citations omitted). Defendant suggests that Benja was a very bad business, but not a Ponzi scheme. And therefore, according to Defendant's alternative facts, there is no Ponzi scheme presumption and no factual basis in the Complaint to establish "actual fraudulent intent" for the First and Second Claims.

The Motion's central argument flies in the face of the plea agreement entered in Chapin's criminal case, *United States v. Chapin*, No. CR 21-00217-MMC, in which Chapin pled guilty and admitted various fraudulent conduct as referenced in the Complaint at Paragraph 6.

As the Complaint alleged, and Chapin admitted, Benja operated as "a fraudulent scheme wherein Benja made payments to creditors and earlier investors from the proceeds of later, fraudulently obtained loans and investments, rather than from profits of the putative underlying business venture … because in fact no such legitimate profitmaking business existed." Complaint at ¶¶ 7-8.

The Complaint established "the who, what, when, where, and how" of the fraud, and puts Defendant on notice of the representations at issue in this case. As set forth in the Complaint, "[o]n September 4, 2020, Chapin sent an e-mail to Defendant soliciting additional investment [in Benja]." Complaint at ¶ 18. Then, "[o]n or about September 14, 2020, Benja entered into a Simple Agreement for Future Equity (the "2020 SAFE") with Peters, pursuant to which Peters purchased the right to certain shares of Benja's capital stock for $500,000." Complaint at ¶ 22. The Complaint set out that Peters wired $250,000 of his investment to Benja on or about September 17, 2020. Complaint at ¶ 25. Thereafter, as alleged in the Complaint, Defendant became aware of facts that placed him on notice or provided Defendant with actual knowledge of Benja's fraudulent

scheme. Complaint at ¶¶ 23-37, 45. The Complaint alleged the "who," "what," and "when" by specifying that Defendant got Benja to transfer $250,000, through Chapin, to Defendant on September 25, 2020, thereby improperly placing Defendant at the front of the line for repayment. Complaint at ¶¶ 37-42. The Complaint specified the "how" and "where" by identifying facts that caused Defendant to jump the line by having Debtor purchase Defendant's worthless shares in Benja via a SAFE Repurchase and General Release Agreement, which was prepared by Chapin and edited by Defendant.[2] Complaint at ¶¶ 26-40. The Complaint further detailed how Chapin was able to transfer $250,000 from Benja's account, and where Benja's funds went: first, to Chapin's personal account as a means to bypass controls placed on Benja's account; and then immediately to Defendant's account at US Bank/RBC Capital Markets. Complaint at ¶¶ 35, 41-42.

Moreover, the Complaint referenced and relied upon the Chapin's plea agreement, in which Chapin admitted his guilt and confessed that he operated Benja as a fraudulent scheme, acted with the intent to defraud its creditors and investors, and used their monies to pay off other creditors and investors and for Chapin's personal benefit. Complaint at ¶¶ 6-8. The reasonable inference from this series of events is the transfer of Benja's property to Defendant was *made in furtherance* of the Benja fraudulent scheme, to prevent Defendant from commencing legal action and/or instigating a criminal prosecution, in order to conceal the ongoing fraud, lull investors, creditors, and customers into a false sense that Benja was a legitimate business, and cause lenders and investors to continue to send money to Benja.

## IV. CONCLUSION

The Motion, which challenges the sufficiency of the first two claims for relief, should be denied. The arguments Defendant raises are without merit and support. A review of the Complaint as a whole demonstrates that the Complaint has pled sufficient facts, which the Court must accept as true, to state a claim to relief that is plausible on its face. Additionally, the Complaint establishes Debtor's "actual fraudulent intent" for purposes of the First and Second Claims. The

---

[2] The Motion describes the transaction as a "recission" but, again, that is a spin of facts that are not in the Complaint.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

facts pled in the Complaint also specify "the who, what, when, where, and how" of the fraud and gives Defendant fair notice of Plaintiff's claims and the grounds upon which they rest, and allows the Court to draw the reasonable inference that Defendant is liable for avoidance of the transfer of $250,000.

Should the Court find that the Complaint is insufficiently pled, Plaintiff requests the Court grant leave to amend the Complaint. Requests for leave to amend should be granted with "extreme liberality." *Moss*, 572 F.3d at 972 (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)); Fed. R. Civ. P. 15(a)(2). Amendment is futile only if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense," *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 656 (9th Cir. 2017) (citation omitted), which is certainly not the case here.

Dated: January 14, 2022                FINESTONE HAYES LLP

By: /s/ Stephen D. Finestone
Stephen D. Finestone
Attorneys for Kyle Everett, Trustee in Bankruptcy