Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
22 Battery Street, Suite 810
San Francisco, California 94111
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for Inverness Advisors, LLC and Tom Peters

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re<br><br>BENJA INCORPORATED<br><br>Debtor | Case No. 20-30819 DM<br><br>Chapter 7 |
| KYLE EVERETT, TRUSTEE<br>　　　Plaintiff<br><br>vs.<br><br>THOMAS B. PETERS<br>　　　Defendant | Case No. 21-03060 DM<br><br>DATE:　　January 28, 2022<br>TIME:　　10:30 a.m.<br>JUDGE:　　Honorable Dennis Montali |

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

## I. SUMMARY

The Trustee's Opposition complains that the Defendant pursues an alternative theory of the case, and urges that the sole focus of attention here should be the Civil Rules. Since the Complaint does not plead fraud with specificity or plausibly, the First and Second Claims for Relief fail to satisfy the Civil Rules, leaving alternative theories of the case irrelevant.

If one focuses on the transaction which is actually at issue, it is clear that fraud is not pled specifically or plausibly. The assertedly fraudulent transfer is *the Refund* paid to Mr. Peters, about a week after he had been defrauded by Chapin into transferring $250,000 to Benja. The Complaint does not explain *anything* about how the Refund could be characterized as fraudulent.

## II. FRAUD IS NOT PLED SPECIFICALLY

With respect to the Refund, the "Factual Allegations" portion of the Complaint **only** alleges that Chapin effected the Refund by wire transfer; ¶ 42; that Benja was insolvent at the time; ¶ 44; and that Peters knew or should have known that Chapin had been engaging in fraud; ¶ 45. Those factual assertions are entirely insufficient to explain how paying the Refund could be a manifestation of actual fraud.

The introductory summary adds a little bit more, but largely through the recitation of labels:

> The transfer of Benja's property to Defendant was pursuant to a Ponzi scheme and not related to any legitimate business transaction, because in fact no such legitimate profitmaking business existed. ¶8

> Plaintiff is informed and believes that the transfer of Benja's property to Defendant was made as part of Benja's fraud, with the actual intent to hinder, delay, or defraud Benja's creditors, or that the transfer was not for adequate consideration, as discussed below…. Plaintiff is informed and believes that, later, Chapin caused the transfer of Benja's property to Defendant with the purpose of concealing the ongoing fraud. ¶9

Plaintiff acknowledges that "[m]ere 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Opposition, 2:25-26; Dkt #6 (citations omitted).

Beyond affixing statutory labels, the summary paragraphs add two vague factual allegations: the Refund was paid "pursuant to a Ponzi scheme," and the Refund was paid "for the purpose of concealing the ongoing fraud." Neither allegation has sufficient specificity to meet Plaintiff's burden.

Payments made "pursuant to a Ponzi scheme" ordinarily tend to be characterized as a return on investment produced by operating profits so as to persuade other investors that the business is sound, stable and profitable. Refunding an investment because it admittedly had been obtained through fraud does not, without further factual assertions, suggest that the business is sound, stable and profitable or otherwise encourage future investors to invest in the business.

Likewise, it is difficult to see how refunding an investment that was obtained through fraud would have the effect of "concealing" anything; rather, it is an admission, and would be perceived as such. Without further factual assertions, it is difficult to imagine what could have been "concealed" by the Refund, in view of the fact that it occurred days after the fraud had been discovered; that is, after "the jig was up."

The Trustee acknowledges that fraud must be pled with specificity; the Complaint must specify "'the who, what, when, where, and how' of the fraud." Opposition, 6:20; Dkt #6. This Complaint does nothing of the sort with respect to the Refund: while it explains how the Refund was effected by wire transfers, it gives no hint about how paying the Refund could represent a manifestation of actual fraud, or who could have been "actually defrauded" by the payment of the Refund.

### III. THE FRAUD ASSERTIONS ARE NOT PLAUSIBLE

The assertions of the Complaint themselves prevent finding plausible the assertion that paying the Refund advanced a fraudulent scheme.

Review the operative facts, as alleged in the Complaint:

- Benja was engaged in a fraudulent scheme in which it falsified and forged documents "to create the appearance of business relationships and profitmaking opportunities that did not exist in order to obtain additional financing." ¶ 6.

- The Defendant was an existing investor, whom Benja persuaded in late September of 2021 to become a victim by funding an additional investment based on Chapin / Benja's false and fraudulent representations. ¶ 18-22. Based on the facts presented in the following paragraph, the Defendant realized almost immediately that he had been defrauded. ¶ 45.

- At the time Defendant was being defrauded, Benja's appearance of profitability was collapsing. Prior to obtaining Defendant's investment, the CFO advised Board members of his "discovery of millions of dollars in undisclosed obligations." ¶ 23. The three largest loans Benja had outstanding were in default. ¶26. On the day the Defendant's funds were received, one of Benja's largest creditors gave notice of acceleration and Benja's legal counsel and outside directors threatened to resign. ¶ 31. Days later, two outside directors in fact resigned. ¶ 33. Clearly, the jig was up.

- A week after receiving Defendant's money, facing pressure from the Defendant, Chapin wired the Refund to the Defendant. ¶ 42.

The Trustee's explanations about fraud cannot be plausible, in the context of the other assertions in the Complaint. He asserts that paying the Refund "concealed" Benja's fraudulent enterprise and advanced the Ponzi scheme, but clearly that could not be true. By the time the Refund was paid, the "jig was up:" millions of dollars of undisclosed liabilities had already come to light, the major loans were all in default and one had already been accelerated, and the independent board members had exited. Clearly, nothing was being "concealed" by paying a Refund to the Defendant.

Similarly, payments in furtherance of a Ponzi scheme give the appearance that the business is sound, stable and profitable, which is why those payments are ordinarily identified as distributions of profits. Here, the Refund was an acknowledgement that Chapin / Benja had unsuccessfully attempted to defraud a long-time investor. The Refund cannot possibly be characterized as advancing the appearance that Benja was sound, stable and profitable.

Based on the facts alleged in the Complaint, there likely is no plausible story which characterizes the payment of the Refund as "concealing" fraud or advancing the appearance that Benja was sound, stable and profitable. In any event, the story has not been presented in this Complaint, so based on the allegations of the Complaint, the Court cannot find plausible the Trustee's assertion that paying the Refund demonstrated "actual fraud."

## IV. CONCLUSION

The Complaint does not satisfy the Civil Rules. The Complaint does not plead fraud "with specificity" as required by Civil Rule 9. It also does not present a "plausible" claim of fraud, as required by Civil Rule 12. The First and Second Claims for Relief in the Complaint should be dismissed.

Respectfully submitted,

DATED: January 21, 2022    ST. JAMES LAW, P.C.

By: /s/ Michael St James .
  Michael St. James
  Counsel for Defendant